UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SUSAN GEMSON,

        Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of the Social Security Administration,

        Defendant.

Case No. C10-1971-RSL-BAT

**REPORT AND RECOMMENDATION**

Susan Gemson seeks review of the denial of her Disability Insurance Benefits application. Her first claim arises from her failure to appear at the 2009 hearing before the ALJ. Her lawyer appeared and asked for a continuance. The ALJ denied the request, took expert testimony and informed counsel that he would issue a show cause notice directing Ms. Gemson to explain her absence. Ms. Gemson received the show cause order but claims her lawyer did not.

Ms. Gemson contends the ALJ erred by failing to continue her hearing and that because her lawyer did not receive the show cause order, her statutory right to appear and present evidence, and her constitutional right to due process were violated. She also contends the ALJ erred in evaluating the opinions of David Roys, M.D., David Jarvis, M.D., and Dave Clemmons, M.D. As discussed below, the Court recommends the case be **REVERSED** and **REMANDED**

REPORT AND RECOMMENDATION - 1

for further administrative proceedings.

**FACTUAL AND PROCEDURAL HISTORY**

Ms. Gemson is currently 56 years old, earned a college degree from Seattle University in 2007, and has worked as a fast food worker and prep cook.[1] On August 21, 2007, she applied for benefits, alleging disability as of March 1, 2005.[2] Her application was denied initially and on reconsideration.[3] On September 2, 2009, the ALJ conducted a hearing. Only Ms. Gemson's lawyer appeared. The ALJ denied counsel's request for a continuance, took expert testimony and informed counsel that he would issue a show cause notice directing Ms. Gemson to explain her absence.[4] The ALJ mailed a show cause notice, dated September 9, 2009, to Ms. Gemson that also contained a "cc" to Ms. Gemson's counsel.[5] Ms. Gemson did not respond and on October 21, 2009, the ALJ issued a decision finding Ms. Gemson not disabled. Tr. 17. The decision also found Ms. Gemson's failure to appear at her hearing and respond to the show cause notice constituted a constructive waiver of her right to appear. *Id.*

On December 11, 2009, Ms. Gemson, through counsel, requested review of the ALJ's decision supported by declarations. Tr. 5. Ms. Gemson's declaration averred "I did not go to my hearing because I wanted to try going back to work, and I did not think I could get benefits if I tried to go back to work. I thought that if I appeared at the hearing, I would get into trouble because I wanted to return to employment." Tr. 12. In regard to the show cause order, Ms. Gemson averred she got something in the mail but not respond because she "assumed [her] attorney was taking care of it." *Id.* Counsel's legal assistant's declaration averred that counsel

---

[1] Tr. 37, 101-102, 110, 118
[2] Tr. 94, 97.
[3] Tr. 45-47, 52-56
[4] Tr. 33-37.
[5] Tr. 89-92.

REPORT AND RECOMMENDATION - 2

did not receive the show cause notice and that Ms. Gemson is easily confused. Tr. 11. On October 21, 2010, the Appeals Council denied Ms. Gemson's request for review making the ALJ's decision the Commissioner's final decision. Tr. 1.

**THE ALJ'S DECISION**

Utilizing the five-step disability evaluation process,[6] the ALJ made the following findings:

> **Step one:** Ms. Gemson had not worked since March 1, 2005.
>
> **Step two:** Ms. Gemson had the following severe impairments: degenerative joint disease and bipolar disorder.
>
> **Step three:** These impairments did not meet or equal the requirements of a listed impairment.[7]
>
> **Residual Functional Capacity:** Ms. Gemson can perform light work as follows: She can lift and carry 50 pounds occasionally and 25 pounds frequently. She can stand, walk or sit 6 hours in an 8 hour day. She can occasionally climb stairs but cannot run, climb ladders or scaffolds. Mentally, she can get along with others, understand detailed instructions, concentrate on and perform detailed tasks and respond and adapt to changes in the workplace and supervision.
>
> **Step four:** As Ms. Gemson can perform her past work, she is not disabled.

Tr. 20-29.

**DISCUSSION**

**A. Ms. Gemson's failure to appear at the hearing before the ALJ**

Ms. Gemson argues the ALJ's failure to continue the September 2, 2009, hearing violated "the ruling as provided in" *McNatt v. Apfel*, 201 F.3d 1084 (9th Cir. 2000), which held that under the HALLEX,[8] I-2-425(D), an ALJ should postpone a hearing in which the claimant fails to appear if the claimant is an essential witness. Dkt. 16 at 13. This argument fails. The HALLEX

---

[6] 20 C.F.R. §§ 404.1520, 416.920.
[7] 20 C.F.R. Part 404, Subpart P. Appendix 1.
[8] The Social Security Administration's Hearing, Appeals, and Litigation and Law Manual. ("HALLEX").

REPORT AND RECOMMENDATION - 3

section upon which Ms. Gemson relies was amended in 2005, after the decision in *McNatt*. Unlike the HALLEX section in effect at the time of the *McNatt* decision, the amended section which was in effect at the time of Ms. Gemson's hearing did not require the ALJ to make findings as to whether a claimant is an essential witness in deciding whether to postpone a hearing. The pertinent provision, amended July 22, 2005, now provides:

> If a claimant's representative appears at a scheduled hearing without the claimant:
>
> 1. The ALJ may determine that the claimant has constructively waived the right to appear at the hearing if the representative is unable to find the claimant, the notice of hearing was mailed to the claimant's last known address, and the contact procedures of 20 CFR §§ 404.938 and 416.1438 have been followed.
>
> If the hearing includes expert witnesses, the ALJ may choose to proceed with the hearing, accepting the testimony of the witnesses and allowing the claimant's representative to question the witnesses and make arguments regarding the claimant's application.
>
> The ALJ should advise the claimant's representative that a Notice to Show Cause will be issued asking the claimant why he or she did not appear, and why a supplemental hearing should be held. If the claimant fails to respond to the Notice to Show Cause or fails to provide good cause for failure to appear at the scheduled hearing, the ALJ may then determine that the claimant has constructively waived his or her right to appear for a hearing, and the ALJ may issue a decision on the record.
>
> 2. If the claimant provides good cause for failure to appear, the ALJ will offer the claimant a supplemental hearing to provide testimony.

HALLEX § I-2-4-25(D).

The record shows the ALJ did not violate this provision. Ms. Gemson's lawyer indicated he received notice of the hearing and believed Ms. Gemson knew about the hearing. Tr. 33-34. The record also contains a copy of the notice of the hearing that was sent to Ms. Gemson. Tr.

REPORT AND RECOMMENDATION - 4

67. Ms. Gemson's counsel was not sure why his client was not present and indicated he thought she might be having mental health problems. The ALJ advised counsel that he would issue a show cause notice to find out why Ms. Gemson failed to appear. Tr. 36-37. The ALJ also called an expert witness and permitted counsel to examine the witness. The record thus reflects that the ALJ complied or materially complied with the procedures set forth in the section of the HALLEX that was effective at the time he conducted the hearing. Accordingly, the ALJ did not err in failing to continue the hearing held on September 2, 2009.

**B.    The show cause notice**

Because Ms. Gemson failed to appear for her hearing, the ALJ issued a show cause notice. Tr. 89. The record contains a copy of the show cause notice dated September 8, 2009. The notice advised Ms. Gemson if she provided the ALJ with a written statement that established good cause for her non-appearance, the ALJ would set another hearing. The notice also advised Ms. Gemson that if good cause was not shown, the ALJ would not hold another hearing. *Id.* The notice contained a "cc" to Ms. Gemson's lawyer with counsel's name and mailing address. Tr. 90.

In a declaration submitted to the Appeals Council, Ms. Gemson stated "[w]hile I did receive something in the mail from the Administrative Law Judge, I assumed my attorney was taking care of it and therefore did not respond. In the past, it was my understanding that my attorney received copies of everything that I did, and he took care of everything for me." Tr. 12.

Although Ms. Gemson received the show cause notice, she contends that because her lawyer did not receive the notice, she did not respond and thereby lost her chance to request a second hearing to present testimony in violation of her statutory and constitutional rights.

The record shows Ms. Gemson's due process rights were not violated. Ms. Gemson has a

procedural due process right—the right to notice and a hearing—in the determination of her disability claims. *See Richardson v. Perales*, 402 U.S. 389, 401-02 (1971). The record shows that the show cause notice was mailed to Ms. Gemson and that she received it. She makes no claim that she lacked the mental capacity to understand the notice; instead the record shows she earned a college degree in 2007 and that the notice is written in plain and simple language. As such, Ms. Gemson's due process rights were preserved because she received the notice and had the capacity to comprehend it. *See e.g. Lodarski v. Bowen*, 1988 WL 251994 at *4 (N.D. Cal., Dec. 16, 1988).

In contrast, the record supports Ms. Gemson's claim that her statutory rights to notice and a hearing were violated. The Commissioner rebuffs this with three arguments. First, the Commissioner argues since the ALJ told counsel he would issue a show cause notice, counsel cannot now claim he was unaware of the notice to show cause. Dkt. 17 at 6-7. This argument implies that so long as counsel knew the ALJ was going to issue a show cause notice, the fact that counsel never received the ALJ's written notice is inconsequential. However, being told a show cause notice would issue is not the same as receiving written notice. The Commissioner's regulations require that written notice be sent to counsel. 20 C.F.R. §404.1715 states:

> (a) We shall send your representative—
>
> (1) Notice and a copy of any administrative action, determination, or decision; and
>
> (2) Requests for information or evidence.
>
> (b) A notice or request sent to your representative, will have the same force and effect as if it had been sent to you.

The use of the term 'shall' generally indicates a mandatory intent unless a convincing argument to the contrary can be made. *See Newman v. Chater*, 87 F.3d 358, 361 (9th Cir. 1996). Hence, a

plain reading of the regulation leads to the straightforward conclusion that the Commissioner was required to send Ms. Gemson's counsel the show cause notice. This reading is buttressed by the lack of anything in the regulation indicating the Commissioner may substitute an oral communication for a written notice. This reading is also supported by part (b) of the regulation which indicates that providing written notice to counsel is more than just a courtesy. Rather, notices provided to counsel have a binding effect on the claimant herself. Hence, the Court concludes the fact the ALJ stated he was issuing a show cause notice does not cure Ms. Gemson's claim that her lawyer never received the show cause notice subsequently issued by the ALJ.

Second, the Commissioner argues the Court should reject Ms. Gemson's claim on the grounds that her lawyer, in fact, received the show cause notice. The parties spar over whether Ms. Gemson's counsel did or did not receive the show cause notice. On the one hand, the Commissioner argues the record shows the ALJ generated a show cause notice which was addressed to Ms. Gemson and copied to counsel. The Commissioner mailed the notice as evidenced by Ms. Gemson acknowledgement that she received "something." The Commissioner contends that if Ms. Gemson received the notice, it is logical to assume the notice was also sent to counsel. The Commissioner submits that if counsel did not receive the notice, it is because counsel misfiled it, or "it was destroyed by some person on the receiving end in an honest clerical mistake." Dkt. 17 at 6.

On the other hand, Ms. Gemson's lawyer has submitted a declaration averring counsel's law office has a protocol that makes it highly unlikely that documents received in the mail from the Commissioner would ever be misfiled or destroyed by mistake. Dkt. 19. The declaration furthermore avers that in the last two years, "I cannot recall a Social Security case where a

document was lost or destroyed and a deadline was missed." *Id.* There is no basis to disbelieve the Commissioner's claim the notice was sent and likewise no basis to disbelieve counsel's claim that he did not receive it. That being the case, the only logical explanation is the notice was sent but not delivered—it was lost in the mail through no fault of either party.

And third, the Commissioner argues even if counsel did not receive the notice, Ms. Gemson did and thus the Commissioner fulfilled his statutory duties. As previously discussed, while this argument deflects Ms. Gemson's due process claim, it does not deflect her claim that the Commissioner erred in failing to give her a chance, under the governing regulations, to show cause why her absence should be excused and another hearing ordered. As noted above, Ms. Gemson relied entirely on her lawyer to respond to her legal matters including legal correspondence. *See* Tr. 12. It is not unreasonable for a party to rely on counsel to take care of all legal matters. This is particularly the case here where Ms. Gemson suffers from bipolar disorder, relied on a private guardianship service to take care of her finances, and received all her legal mail at this service. Tr. 156, 89. Under these circumstances, it was reasonable for Ms. Gemson to rely on counsel to take care of her legal matters, including responding to legal notices. The Court thus concludes that because counsel did not receive the notice, Ms. Gemson was denied the statutory opportunity to show cause and denied the chance to appear and present testimony to the ALJ.

The matter should thus be remanded to allow Ms. Gemson to submit a written statement to the ALJ explaining why she did not appear September 2, 2009, hearing. To be clear, the Court has not found that another hearing must be scheduled and is not directing the Commissioner to schedule another hearing at this point. Whether another hearing should be scheduled is contingent on whether Ms. Gemson can show good cause; the Court leaves that determination to

the Commissioner.

**C.    The ALJ's evaluation of the medical evidence**

Ms. Gemson also contends the ALJ erred in evaluating the opinions of David Roys, M.D., David Jarvis, M.D., and Dave Clemmons, Ph.D., regarding her mental impairments.  Dkt. 16 at 9-12.

**1.  Dr. Roys**

Dr. Roys is Ms. Gemson's treating physician.  His records show Ms. Gemson had good days and bad days.  Ms. Gemson argues the ALJ improperly picked only the goods days in concluding she was able to perform her past work.  *Id*. at 9-10.  As Dr. Roys is a treating physician, his opinion may be rejected only for "clear and convincing reasons."  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)).  Where contradicted, a treating physician's opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for doing so." *Id*. at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).  The ALJ must do more than offer his conclusions; he must also explain why his interpretation, rather than the treating doctor's interpretation, is correct.  *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

The ALJ discounted Dr.  opinion for several valid reasons.  First, the ALJ noted Dr. Roys' treatment records showed she had many good days.  The ALJ found this was inconsistent with the opinion the doctor gave in a DSHS evaluation that Ms. Gemson had widespread moderate work limitations.  Tr. 27.  To be sure, Dr. Roys' records also showed that Ms. Gemson had bad days and it is arguable that his records are susceptible to more than one interpretation.  This Court, however, is not permitted to reweigh the evidence or substitute its judgment for the

REPORT AND RECOMMENDATION - 9

judgment of the ALJ. Where, as here, the medical evidence is susceptible to more than one interpretation, it is the Commissioner's interpretation that must be upheld. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

Second, the ALJ found Dr. Roys' opinion that Ms. Gemson had moderate mental limitation was not consistent with other medical evidence. The ALJ noted that Dr. Peterson, Ph.D. opined that Ms. Gemson had only mild restrictions in her daily activities, social functioning, and moderate limits to pace and persistence. Tr. 27. Dr. Peterson also opined that Ms. Gemson did not have limitations on attention, maintaining attendance, sustaining an ordinary routine and working in coordination and in proximity to other people. Tr. 28. Dr. Jarvis assessed Ms. Gemson with a GAF score of $65^9$ which indicates Ms. Gemson has only mild symptoms and found that her bipolar disorder was under good control with medications. *Id.* And Dr. Eisenhauer, Ph.D., opined that Ms. Gemson had only mild restrictions of activities of daily living, social functioning and in maintaining concentration, pace and persistence. Tr. 28-29.

And third, the ALJ found Dr. Roys' opinions inconsistent with Ms. Gemson's actual level of activity which indicated much a higher level of social functioning and a much lower level of impairment than found by the doctor. Tr. 27-28. The ALJ found "the fact the claimant successfully returned to academic studies, completed her degree, and wrote a play reveals much greater mental ability that she alleges or the doctor [Roys] assesses." Tr. 28. An ALJ may properly reject a physician's opinion that is inconsistent with the record, including the claimant's

---

[9]GAF 61-70: Some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well; has some meaningful personal relationships Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, 34 (4th ed. 1994) ("DSM IV")

actual level of activity.  *See Meanel v. Apfel*, 172 F.3d 1111, 1113-14 (9th Cir. 1999).

Accordingly, the Court will not disturb the ALJ's evaluation of Dr. Roys' opinions regarding impairments related to her bipolar disorder.

**2. Dr. Jarvis**

Dr. Jarvis is an examining physician who evaluated Ms. Gemson in March, 2006.  Tr. 342.  The ALJ reviewed, in detail, Dr. Jarvis' findings and concluded they showed Ms. Gemson had mild restrictions to activities of daily living and mild difficulties maintaining social functioning, and moderate difficulties in maintaining concentration, persistence and pace.  Tr. 20.  Ms. Gemson contends the ALJ erroneously failed to discuss and give weight to one statement the doctor made:

> Susan's Bipolar Disorder, with manic episodes, though well controlled on medications, continues to create a significant threat to her ability to understand, remember and follow complex instructions, exercise judgment and make decisions, relate appropriately to others and respond appropriately to or tolerate the pressures and expectations of a normal work setting.

Tr. 347.  Ms. Gemson believes that, in this statement, Dr. Jarvis opined she is "significantly impaired in her ability to respond appropriately or tolerate the pressures and expectations of the normal work setting." Dkt. 16 at 12.  This reads too much into the statement.  The doctor clearly did not state Ms. Gemson is presently significantly impaired and unable to work.  Rather, the doctor stated Ms. Gemson's bipolar disorder posed a continuing threat to her ability to function.  In other words, that Ms. Gemson's bipolar disorder will not disappear or be "cured" but is an on-going condition, which if not treated, could significantly impair her functioning.  As Dr. Jarvis did not opine in this statement that Ms. Gemson was significantly impaired the ALJ did not err in failing to fully discuss the statement.  *See Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir.

1984) (An ALJ must explain why "significant, probative evidence has been rejected," but need not discuss all evidence presented).

Ms. Gemson's reading of the statement is also inconsistent with Dr. Jarvis' findings that her bipolar disorder was well controlled with medication; that her GAF score of 65 indicated she had only mild symptoms; that she had a normal mental status, normal speech, ability to think abstractly and memory, and that she had no problems with judgment, or insight. Tr. 28; *see also* Tr. 346-47. While Ms. Gemson interprets Dr. Jarvis' opinions as showing greater impairment then found by the ALJ, it is the ALJ who is determines credibility, resolves conflicts in medical testimony, and resolves any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d at 1039. The Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, as it is here, it is the Commissioner's conclusion that must be upheld. *Id.*

3.  **Dr. Clemmons**

Dr. Clemmons is an examining physician who evaluated Ms. Gemson in June 2007. Ms. Gemson contends the ALJ erred in failing to "acknowledge Dr. Clemmon's concerns that due to her impairments Ms. Gemson requires external support in order for her to continue with her vocational goals." Dkt. 16 at 12. This argument implies that had the ALJ done so, he would have found Ms. Gemson disabled. Dr. Clemmons' report, however, does not support this argument. First, Dr. Clemmons did not render an opinion about Ms. Gemson's bipolar disorder or whether Ms. Gemson was disabled due to this impairment. Rather, Dr. Clemmons stated Ms. Gemson was referred to him for vocational assistance and reported Ms. Gemson "presented a draft of a play she had written and indicated her main interest was to produce that work in Seattle

area." Tr. 388. Consequently, the doctor stated his "services focused on helping Ms. Gemson to develop a resume and to consider possible part-time employment while she markets/rewrites her play." This shows Ms. Gemson believed she could produce a play and that Dr. Clemmons believed Ms. Gemson was able to perform some type of work while she was marketing her play.

Second, Ms. Gemson and Dr. Clemmons discussed the contents of her resume. Ms. Gemson had specific suggestions about including her past work in her resume. If the doctor believed Ms. Gemson could not work and was disabled, it would have made no sense for him to spend any time discussing with Ms. Gemson the contents of her resume.

And third, Dr. Clemmons' opinion "if Ms. Gemson is to continue pursuing her vocational goals, she is likely to need external support," was given in the context of achieving her stated vocational goal. As noted above, Ms. Gemson's vocational goal was to produce her play. The doctor stated he had reservations about this goal because of the "marketability" of the play and Ms. Gemson's insight or judgment about her ability to produce a play. He felt that, while she was working on plans to produce her play, she could benefit from participating in AmeriCorp. Tr. 389. He explained that "it was his impression" that Ms. Gemson needed help with organization and planning. *Id.* As grounds, he noted she had missed appointments with him and was late on one occasion he did not indicate that she was unable to perform any work.

On its face, then, the opinion indicates Dr. Clemmons believed Ms. Gemson likely needs external support to achieve her vocational goal of producing her play. But that is as far as the opinion goes. The doctor did not elaborate about what other jobs Ms. Gemson could perform, or opine, as Ms. Gemson suggests, that she could not do any work without external support, and could not perform her past work as a fast food worker as the ALJ found. Accordingly, the ALJ's assessment of Dr. Clemmon's opinions should not be disturbed.

**CONCLUSION**

For the foregoing reasons, the Court recommends that the Commissioner's decision be **REVERSED** and the case be **REMANDED** for further administrative proceedings.

On remand, the Commissioner should allow Ms. Gemson to submit a written statement to the ALJ explaining why she did not appear at the September 2, 2009 hearing. The ALJ should determine whether another hearing should be scheduled to take testimony from Ms. Gemson. If a new hearing is conducted, the ALJ shall consider the impact of Ms. Gemson's testimony on the five step disability evaluation process and conduct proceedings accordingly.

Any objections to this Recommendation must be filed and served upon all parties no later than **June 28, 2011.** If no objections are filed, the matter will be ready for the Court's consideration on that date. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. The matter will then be ready for the Court's consideration on the date the response is due. Objections and responses shall not exceed twelve pages. The failure to timely object may affect your right to appeal.

A proposed order accompanies this Report and Recommendation.

DATED this 14th day of June, 2011.

BRIAN A. TSUCHIDA
United States Magistrate Judge